# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHERO LEE EVERSON,<br><br>Defendant. | No. CR09-4021-MWB<br><br>**REPORT AND RECOMMENDATION ON MOTIONS TO SUPPRESS** |

This matter is before the court on two motions to suppress evidence filed by the defendant Chero Lee Everson. *See* Doc. Nos. 26 & 32. On April 23, 2009, Everson was indicted for possession with intent to distribute five grams or more of actual (pure) methamphetamine, and fifty grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 851. Doc. No. 1. Everson's indictment arose from evidence discovered as the result of a traffic stop during which she was arrested for not wearing a seatbelt.

Everson filed her first motion to suppress, Doc. No. 26, on May 14, 2009, arguing she was detained at the scene of the traffic stop for an unreasonable period of time before she was arrested. She filed her second motion to suppress, Doc. No. 32, on May 27, 2009, arguing a drug dog used at the scene of the traffic stop was not reliable. The plaintiff (the "Government") filed a combined resistance to both motions on May 28, 2009. Doc. No. 34.

Pursuant to Section IV of the Trial Management Order, Doc. No. 22, motions to suppress in this case were assigned to the undersigned for review, the holding of any hearing deemed necessary, and the preparation of a report and recommended disposition of the motions. The court held a hearing on the motions on May 29, 2009, at which Assistant U.S. Attorney John Lammers appeared on behalf of the Government, and Everson appeared in person with her attorney Matthew Metzgar. The Government offered

the testimony of Tri-State Drug Task Force Officer Todd Peterson, and Sioux City Police Officer Martin Divis. The parties stipulated to the admission into evidence of three DVDs of the traffic stop. *See* Gov't Ex. 1.

The court has reviewed the parties' briefs and considered the evidence and the arguments of counsel, and makes the following report and recommendation on Everson's motions to suppress.

## *FACTUAL BACKGROUND*

In mid-March 2009, TFO Peterson received a report from a Confidential Informant ("CI") that he had met with a Jeremy Norton and an Hispanic female, later identified as Everson, to discuss the purchase of some methamphetamine. The CI stated Norton would be returning to Sioux City in the future, and the CI ordered a quantity of methamphetamine. The CI stated Norton was driving a red Ford Explorer vehicle, and he provided Peterson with the license plate number. A check of the license plate revealed that the car was registered to Everson at a North Platte, Nebraska, address.

On April 8, 2009, the CI contacted Peterson to report that Norton was back in town and he had two ounces of methamphetamine with him that he was attempting to sell to the CI. Peterson instructed the CI to set up a meeting with Norton to complete the drug transaction, although Peterson did not intend for the CI to actually attend the meeting with Norton. The CI arranged to meet Norton in the parking lot of a Home Depot store in Sioux City. Officers went to the Home Depot parking lot and observed Norton and Everson arrive in a red Ford Explorer matching the description the CI had provided previously. Peterson saw Everson get out of the vehicle and enter the Home Depot, and then return to the vehicle a short time later. According to the CI, Norton called him repeatedly to attempt to sell him the methamphetamine. The CI did not show up at the Home Depot, but told Norton he was at a McDonald's restaurant in the Morningside area of Sioux City. He arranged to meet Norton at the McDonald's. Officers followed Norton

and Everson as they proceeded to the McDonald's. Norton and Everson stayed in their vehicle for quite some time. Then they entered the restaurant, bought food, returned to their vehicle, and drove around the block a few times, always returning to the area. During this time, the CI was having sporadic telephone contact with Norton and with TFO Peterson. Norton continued to indicate he wanted to get rid of the drugs so he and Everson could get out of town.

Peterson contacted the Sioux City Police Department to request that a uniformed officer attempt to conduct a traffic stop on the Explorer. Norton and Everson drove out of the McDonald's parking lot and Officer Divis, who had heard the request for assistance, saw the vehicle drive right by his car. He observed that neither Norton nor Everson was wearing a seat belt, so he stopped them for the seat belt violation.

Divis testified he is very familiar with the smell of both burnt and green marijuana, and he has received training in detecting the substance. As he approached the driver's side of the vehicle, there was a slight breeze blowing toward him, and he detected the odor of burnt marijuana coming from the vehicle. He introduced himself to Norton, who was driving, and asked for identification and proof of insurance. He noted that Norton was very clammy, nervous, and shaking. Norton admitted that he and Everson had only put on their seat belts when they were stopped by Divis. Norton produced his driver's license, while Everson dug around in the glove compartment until she finally produced the vehicle registration and insurance information. Divis testified he could smell the odor of marijuana distinctly the entire time he was standing next to the vehicle.

Divis returned to his vehicle to check Norton and Everson for outstanding warrants. He discovered he had forgotten to obtain Everson's birth date, so he returned to the Explorer, got her birth date, and then returned to his patrol car to run the search. While he was waiting for the search results, he had a brief telephone conversation with Peterson. Another officer arrived at the scene, and he and Divis placed both Norton and Everson under arrest for failing to wear their seat belts. The arrest was accomplished within

approximately five minutes after the initiation of the traffic stop. Divis called for a female officer to come to the scene to search Everson prior to transport. When the female officer arrived and approached Everson, she exclaimed, "Woo! Smells like marijuana!"

Norton and Everson were taken to the jail. During the booking process, a quantity of methamphetamine was found in Everson's clothing. A search of her purse yielded some drug paraphernalia and prescription medication. Officers searched the Explorer with a drug dog and found some drug paraphernalia.

Everson argues she was detained unlawfully at the scene of the traffic stop after Divis had determined that she had no outstanding warrants. She argues her arrest was not timely as required by law, and she seeks to suppress all evidence arising from her arrest. She also challenges evidence located as a result of the drug dog's actions, arguing the dog was unreliable. However, neither party presented evidence at the hearing regarding the drug dog's reliability or the evidence that was found in the vehicle. Further, the parties appeared to agree that the motions, and the case, succeed or fail on the basis of the validity of Everson's arrest and the drugs found on her person at the jail.

## DISCUSSION

Little discussion is required to resolve Everson's motions. First, the officer lawfully stopped the vehicle when he saw that Everson and Norton were not wearing seat belts. The law is well settled that an officer has probable cause for a traffic stop when any traffic violation occurs, however minor. *See, e.g., United States v. Gregory*, 302 F.3d 805, 809 (8th Cir. 2002) (citations omitted). This is true even if the stop is pretextual. *See United States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007) (citations omitted).

Second, once the officer smelled the odor of marijuana coming from the car, the officers had probable cause to search the car under the "automobile exception" to the warrant requirement. *See, e.g., United States v. Caves*, 890 F.2d 87, 89-90 (8th Cir. 1989) (citing, *inter alia*, *Chambers v. Maroney*, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed.

4

2d 419 (1970); *California v. Carney*, 471 U.S. 386, 392, 105 S. Ct. 1066, 2072, 85 L. Ed. 2d 406 (1985)).

Third, the court finds no violation of Everson's rights occurred when she was not arrested instantly after Divis determined she had no outstanding warrants and he had confirmed her identity. Everson argues that instead of arresting her immediately, officers at the scene began looking through her purse without her consent, and this constituted "a second detention completely unrelated to the seat belt violation." Neither party offered any evidence at the hearing relating to any officer's search of Everson's purse. In any event, the court finds Everson's failure to wear her seat belt provided probable cause for her arrest. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001).

Everson's continued detention for a couple of minutes prior to her arrest was justified by the officers' reasonable suspicion that criminal activity unrelated to the stop was afoot. *See United States v. Chavez Loya*, 528 F.3d 546, 553 (8th Cir. 2008), and cases cited therein. In making this determination, the court considers the collective knowledge of all of the officers involved in the investigation, not merely "'the information within the knowledge of the officer on the scene if there is some degree of communication.'" *United States v. Morales*, 238 F.3d 952, 954 (8th Cir. 2001) (quoting *United States v. Horne*, 4 F.3d 579, 585 (8th Cir. 1993)). Divis was in communication with Peterson, and he knew Norton and Everson were suspected of transporting a large quantity of methamphetamine. Thus, the couple of minutes' detention that occurred beyond that required to investigate the traffic violation was justified.

The United States Supreme Court recently explained:

> A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free

> to leave. [Citation omitted.] An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop. *See Muehler v. Mena*, 544 U.S. 93, 101-101, 125 S. Ct. 1465, 161 . Ed. 2d 929 (2005).

*Arizona v. Johnson*, ___ U.S. ___, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009). Here, the traffic stop was "extended," if at all, by only a minute or two, an interval the court finds did not "measurably extend" the duration of the stop.

Everson has failed to show her rights were violated in any respect, and her motions to suppress evidence should be denied.

Objections to this Report and Recommendation must be filed by **June 8, 2009**. Responses to objections must be filed by **June 11, 2009**.

IMPORTANT NOTE: Any party planning to lodge any objection to this report and recommendation must order a transcript of the hearing promptly, but not later than **June 3, 2009**, **regardless of whether the party believes a transcript is necessary to argue the objection**. If an attorney files an objection to this report and recommendation without having ordered the transcript as required by this order, the court may impose sanctions on the attorney.

**IT IS SO ORDERED.**

**DATED** this 1st day of June, 2009.

　　　　　　　　　　　　　　　　　*[signature]*
　　　　　　　　　　　　　　　　　PAUL A. ZOSS
　　　　　　　　　　　　　　　　　CHIEF MAGISTRATE JUDGE
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT