**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CHERO LEE EVERSON,<br><br>　　　　　Defendant. | No. CR09-4021-MWB<br><br>**ORDER CONCERNING MAGISTRATE'S REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTIONS TO SUPPRESS** |

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
　　*A.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
　　*B.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
　　*A.  Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
　　*B.  Objections To Report and Recommendation* . . . . . . . . . . . . . . . . 10
　　　　*1.  Consideration of Ballard decision* . . . . . . . . . . . . . . . . 10
　　　　*2.  Arrest for seat belt violation* . . . . . . . . . . . . . . . . . . . 12
　　　　*3.  State constitution* . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On April 23, 2009, an indictment was returned against defendant Chero Lee Everson, charging defendant Everson with possessing with intent to distribute 5 grams or more of pure methamphetamine and 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). On May 14, 2009, defendant Everson filed a motion to suppress. In her motion, defendant Everson contends that the court should suppress all the evidence that resulted from a traffic stop of the vehicle in which she was riding, arguing that even if the police had probable cause to stop her vehicle, the police violated her Fourth Amendment rights by continuing to detain her after the police had concluded their investigation for the observed traffic violation. On May 27, 2009, defendant Everson filed a second motion to suppress. In her second motion to suppress, defendant Everson challenges the search of her vehicle on the ground that a police drug dog used at the scene of the traffic stop was not reliable. The prosecution filed a timely resistance to defendant Everson's motions.

Defendant Everson's motions to suppress were referred to Chief United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b). After conducting an evidentiary hearing, on May 29, 2009, Judge Zoss filed a Report and Recommendation in which he recommends that defendant Everson's motions to suppress be denied. Judge Zoss concluded that the police had probable cause to conduct a traffic stop of defendant Everson's vehicle. Judge Zoss further found that the police officers' continued detention of defendant Everson was supported by a reasonable, articulable suspicion that criminal activity was afoot. Judge Zoss also concluded that defendant Everson's failure to wear her seat belt provided probable cause for her arrest. Accordingly, Judge Zoss concluded that

defendant Everson's detention after the traffic stop, and arrest were lawful. Therefore, Judge Zoss recommended that defendant Everson's motions to suppress be denied. Defendant Everson has filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Everson's motions to suppress.

### *B. Factual Background*

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> In mid-March 2009, TFO Peterson received a report from a Confidential Informant ("CI") that he had met with a Jeremy Norton and an Hispanic female, later identified as Everson, to discuss the purchase of some methamphetamine. The CI stated Norton would be returning to Sioux City in the future, and the CI ordered a quantity of methamphetamine. The CI stated Norton was driving a red Ford Explorer vehicle, and he provided Peterson with the license plate number. A check of the license plate revealed that the car was registered to Everson at a North Platte, Nebraska, address.
>
> On April 8, 2009, the CI contacted Peterson to report that Norton was back in town and he had two ounces of methamphetamine with him that he was attempting to sell to the CI. Peterson instructed the CI to set up a meeting with Norton to complete the drug transaction, although Peterson did not intend for the CI to actually attend the meeting with Norton. The CI arranged to meet Norton in the parking lot of a Home Depot store in Sioux City. Officers went to the Home Depot parking lot and observed Norton and Everson arrive in a red Ford Explorer matching the description the CI had provided previously. Peterson saw Everson get out of the vehicle and enter the Home Depot, and then return to the vehicle a short time later. According to the CI, Norton called him repeatedly to attempt to sell him the methamphetamine.

3

The CI did not show up at the Home Depot, but told Norton he was at a McDonald's restaurant in the Morningside area of Sioux City. He arranged to meet Norton at the McDonald's. Officers followed Norton and Everson as they proceeded to the McDonald's. Norton and Everson stayed in their vehicle for quite some time. Then they entered the restaurant, bought food, returned to their vehicle, and drove around the block a few times, always returning to the area. During this time, the CI was having sporadic telephone contact with Norton and with TFO Peterson. Norton continued to indicate he wanted to get rid of the drugs so he and Everson could get out of town.

Peterson contacted the Sioux City Police Department to request that a uniformed officer attempt to conduct a traffic stop on the Explorer. Norton and Everson drove out of the McDonald's parking lot and Officer Divis, who had heard the request for assistance, saw the vehicle drive right by his car. He observed that neither Norton nor Everson was wearing a seat belt, so he stopped them for the seat belt violation.

Divis testified he is very familiar with the smell of both burnt and green marijuana, and he has received training in detecting the substance. As he approached the driver's side of the vehicle, there was a slight breeze blowing toward him, and he detected the odor of burnt marijuana coming from the vehicle. He introduced himself to Norton, who was driving, and asked for identification and proof of insurance. He noted that Norton was very clammy, nervous, and shaking. Norton admitted that he and Everson had only put on their seat belts when they were stopped by Divis. Norton produced his driver's license, while Everson dug around in the glove compartment until she finally produced the vehicle registration and insurance information. Divis testified he could smell the odor of marijuana distinctly the entire time he was standing next to the vehicle.

>Divis returned to his vehicle to check Norton and Everson for outstanding warrants. He discovered he had forgotten to obtain Everson's birth date, so he returned to the Explorer, got her birth date, and then returned to his patrol car to run the search. While he was waiting for the search results, he had a brief telephone conversation with Peterson. Another officer arrived at the scene, and he and Divis placed both Norton and Everson under arrest for failing to wear their seat belts. The arrest was accomplished within approximately five minutes after the initiation of the traffic stop. Divis called for a female officer to come to the scene to search Everson prior to transport. When the female officer arrived and approached Everson, she exclaimed, "Woo! Smells like marijuana!"
>
>Norton and Everson were taken to the jail. During the booking process, a quantity of methamphetamine was found in Everson's clothing. A search of her purse yielded some drug paraphernalia and prescription medication. Officers searched the Explorer with a drug dog and found some drug paraphernalia.

Report and Recommendation at pp. 2-4. Upon review of the record, the court adopts all of Judge Zoss's factual findings.

## II. LEGAL ANALYSIS

### A. *Standard Of Review*

The court reviews the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

>A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the

matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district

court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while de novo review generally entails review of an entire matter, in the context of § 636 a district court's *required* de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit has been willing to "liberally construe[]" otherwise general pro se objections to require a de novo review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to this court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is

7

appropriate."). Therefore, this court will strive to provide de novo review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give de novo review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed). The court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a

8

definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.[1]

---

[1] The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United*

(continued…)

As noted above, defendant Everson has filed objections to Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Everson's motions to suppress.

### B. Objections To Report and Recommendation

#### 1. Consideration of Ballard decision

Defendant Everson's initial objection is that Judge Zoss's Report and

---

[1](...continued)
*States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will *not* result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g.*, *United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions de novo." (citation omitted)).

Recommendation does not take into consideration the South Dakota Supreme Court's decision in *State v. Ballard*, 617 N.W.2d 837 (S.D. 2000). Although defendant Everson concedes that the *Ballard* decision is not controlling precedent, she nonetheless argues that given the factual similarities of that case to this one, the constitutional analysis in that decision bears consideration here.

The essential, constitutional role of the federal judiciary is controlling the interpretation, declaration, and application of federal law. *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 76-81 (1982). Thus, federal courts bear the ultimate responsibility for declaring federal law. Recognizing this principle, Judge Zoss correctly limited his analysis to controlling federal case law precedent from the United States Supreme Court and the Eighth Circuit Court of Appeals.

In addition, the facts in the *Ballard* decision are markedly different from those presented here, and, as a result, application of that decision would not necessitate a different outcome. In *Ballard*, a deputy sheriff stopped the defendant for driving erratically. *Ballard*, 617 N.W.2d 837 at 839. When the deputy asked the defendant for her driver's license, registration, and proof of insurance, the officer noticed that the defendant seemed "'very fidgety'--her hands were shaking; she could not sit still; her pupils were constricted; and she had a 'wired' look.'" *Id*. Although the deputy suspected methamphetamine use by the defendant, he told her she was free to leave before calling a police drug dog or searching her car. *Id*. The deputy sheriff told the defendant that he was suspicious about the presence of drugs in her car and requested her consent to search it. The defendant refused. *Id*. At which point, the deputy sheriff told the defendant that he was going to detain her vehicle until a drug dog could be brought to the scene. After a police drug dog "alerted" to a part of the car, a search of the vehicle revealed drugs and drug paraphernalia. *Id*. The South Dakota Supreme Court, "concerned with the dubious

11

message we send to law enforcement officers and the public if we validate a procedure allowing officers to falsely tell traffic offenders they are free to go, only for the purpose of eliciting their uncoerced agreement to search their automobiles", held that telling the defendant she was free to go eliminated the deputy's limited authority to act upon any objectively reasonable suspicions he may have previously developed. *Id*. at 841-42. Accordingly, the South Dakota Supreme Court ordered that the evidence found during the search of the defendant's vehicle be suppressed. *Id*. The present case is clearly distinguishable from the situation in *Ballard*. In *Ballard*, the deputy sheriff specifically told the driver that she was "free to go" after he had completed the permissible license check and observed the suspicious behavior. *Id.* at 839. Here, defendant Everson was never told she was free to leave. Furthermore, it is clear Officer Divis became suspicious of drug use before completing a computerized background check, thereby providing him with reasonable suspicion to justify extending the detention of Everson's vehicle. Also, here, the police, rather than seek permission to search the vehicle, as the deputy sheriff did in *Ballard*, arrested defendant Everson for failure to wear her seat belt before completing the traffic stop. Thus, because the holding in *Ballard* was expressly limited to facts involving a motorist's detention following the completion of a traffic stop in which a law enforcement officer told the defendant that she was free to leave, *Ballard* does not apply to a traffic stop like the one involved in this case. The court, therefore, overrules this objection to Judge Zoss's Report and Recommendation.

### 2. *Arrest for seat belt violation*

Defendant Everson also objects to Judge Zoss's conclusion that her warrantless arrest for a seat belt violation did not violate the Fourth Amendment's prohibition on unreasonable search and seizures. For the purpose of preserving her record on the issue, defendant Everson requests that the court reject the holding of the United States Supreme

Court's decision in *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001). In *Atwater*, a mother was arrested for the misdemeanor offenses of failing to wear and failing to have her children wear seatbelts. *See id*. at 323. The Supreme Court held that the Fourth Amendment did not prohibit arrest for these offenses. *See id*. at 354. Rather, the Court held that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Id*. Here, Officer Divis personally observed defendant Everson not wearing a seat belt, in violation of Iowa law. Thus, the *Atwater* decision makes clear that even a non-violent misdemeanor offense, such as the seat belt violation in this case, can support an arrest under the Fourth Amendment, as long as the officer had probable cause to believe the offense had been committed.[2] Moreover, although defendant Everson contends that the *Atwater* decision has been the subject of criticism by legal commentators, the *Atwater* decision is binding authority which this court is obliged to follow until the Supreme Court overrules itself. *See Jones v. St. Paul Cos., Inc.*, 495 F.3d 888, 893 (8th Cir. 2007) ("Federal courts . . . are not 'free to limit Supreme Court opinions precisely to the facts of each case.'") (quoting *City of Timber Lake v. Cheyenne River Sioux Tribe,* 10 F.3d 554, 557 (8th Cir. 1993)); *see also Arman v. McKean*, 549 F.3d 279, 292 (3rd Cir. 2008) (noting that "it is solely the prerogative of the Supreme Court to depart from its precedents."); *United States v. Clanton*, 538 F.3d 652, 654 (7th Cir. 2008) ("[W]e have no authority to overrule a decision by the Supreme Court of the United States."); *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Obviously, binding authority is very powerful medicine. A decision of the Supreme Court will control

---

[2] Iowa Code § 321.485(1)(a) provides that Iowa law enforcement officers having reasonable cause to believe that a person has violated any traffic or motor vehicle equipment law may arrest the person and immediately take the person before a magistrate.

that corner of the law unless and until the Supreme Court itself overrules or modifies it. Judges of the inferior courts may voice their criticisms, but follow it they must."). As the Supreme Court has expressly stated, "it is this Court's prerogative alone to overrule one of its precedents." *State Oil Co. v. Khan,* 522 U.S. 3, 20 (1997); *see Hohn v. United States*, 524 U.S. 236, 252-53 (1998) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality."); *Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent."). The court, therefore, overrules this objection to Judge Zoss's Report and Recommendation.

### 3. *State constitution*

Defendant Everson further objects to Judge Zoss's Report and Recommendation on the ground that the Iowa Supreme Court would not follow the United States Supreme Court's holding in *Atwater* in interpreting Article 1, Section 8 of the Iowa Constitution, but would hold that Article 1, Section 8 of the Iowa Constitution provides greater protection than the Fourth Amendment.[3] As a result, defendant Everson contends that her arrest would be in violation of the Iowa Constitution and should be suppressed. Like the

---

[3] Article 1, Section 8 of the Iowa State Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons and things to be seized.

IOWA CONST. Art. 1, § 8.

Fourth Amendment, Article 1, Section 8 of the Iowa Constitution also protects against unreasonable searches and seizures. *State v. Jones,* 666 N.W.2d 142, 145 (Iowa 2003). The Iowa Supreme Court, however, generally does not differentiate in its analysis between Article 1, Section 8 of the Iowa Constitution and the Fourth Amendment of the United States Constitution. *See generally State v. Christopher*, 757 N.W.2d 247, 249 (Iowa 2008) (noting that "[b]ecause the search and seizure clause of the Iowa Constitution is nearly verbatim to the language of the Fourth Amendment, cases interpreting the Fourth Amendment are persuasive-but not binding-on our interpretation of the Iowa Constitution. We usually interpret the scope and purpose of the Iowa Constitution's search and seizure provisions to track with federal interpretations of the Fourth Amendment.") (citation omitted); *State v. Hoskins,* 711 N.W.2d 720, 725 (Iowa 2006) ("Cases interpreting the federal constitution are persuasive in our interpretation of the state constitution because the federal and state search-and-seizure clauses are similar."); *Jones,* 666 N.W.2d at 145 ("The Iowa Constitution also contains a search and seizure clause that is virtually identical to the Fourth Amendment. Accordingly, we usually interpret "'"the scope and purpose of article I, section 8, of the Iowa Constitution to track with federal interpretations of the Fourth Amendment.'"") (citation omitted) (quoting *State v. Breuer*, 577 N.W.2d 41, 44 (Iowa 1998) (quoting in turn *State v. Showalter,* 427 N.W.2d 166, 168 (Iowa 1988)). Defendant Everson has not given the court reason to believe that the Iowa Supreme Court would distinguish the protections of the Iowa Constitution from those of the United States Constitution here. Thus, the court believes that the Iowa Supreme Court would interpret its constitutional provision against unreasonable searches and seizures in keeping with the holding of the *Atwater* decision. However, the court need not consider whether the Iowa Constitution was satisfied or not here. The issue in this case is one under the Fourth Amendment and the exclusion of evidence would only be warranted if there were a

15

violation of the Constitution of the United States. *See Cooper v. California*, 386 U.S. 58, 61 (1967) (observing that "the question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment."); *United States v. McGauley*, 279 F.3d 62, 74 (1st Cir. 2002) ("[E]vidence obtained in violation of neither the Constitution nor federal law is admissible in federal court proceedings without regard to state law.'") (quoting *United States v. Charles*, 213 F.3d 10, 19 (1st Cir. 2000) (quoting in turn *United States v. Sutherland*, 929 F.2d 765, 769 (1st Cir. 1991)); *United States v. Delaporte*, 42 F.3d 1118, 1119 (7th Cir. 1994) ("State officers do not by violating state law violate the federal Constitution."); *United States v. Clyburn*, 24 F.3d 613, 616 (4th Cir. 1994) ("The federal inquiry [does not turn] on whether a state officer violated state law in securing probative evidence."); *United States v. Eastland*, 989 F.2d 760, 766 (5th Cir. 1993) ("In determining the reach of the Fourth Amendment, it is well-established that federal law controls."); *United States v. Mitchell,* 783 F.2d 971, 973, 974 (10th Cir.) (holding that possible violations of state law were irrelevant to determination of whether suppression necessary under Fourth Amendment), *cert. denied,* 479 U.S. 860 (1986); *United States v. Little*, 753 F.2d 1420, 1434 (9th Cir. 1984) ("Evidence obtained in violation of neither the Constitution nor federal law is admissible in federal court proceedings *without regard to state law*.") (emphasis original). As discussed above, defendant Everson's arrest here for a seat belt violation does not violate the Fourth Amendment. *See Atwater*, 532 U.S. at 323. The court, therefore, also overrules this objection to Judge Zoss's Report and Recommendation.[4]

---

[4]Although the court typically refrains from labeling arguments of counsel as "frivolous", defense counsel's objection here is so far beyond frivolous as to rise to the
(continued…)

### *III. CONCLUSION*

Therefore, for the reasons set forth above, the court, upon a *de novo* review of the record, accepts Judge Zoss's Report and Recommendation and **denies** defendant Everson's motions to suppress.

**IT IS SO ORDERED.**

**DATED** this 19th day of June, 2009.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

---

[4](…continued)
level of laughable. Indeed, this is the type of flummadiddle objection one would expect to see from a defendant acting *pro se* and not an officer of the court.